Mary E. PATRICK, Appellant,

v.

Dr. Jack D. SEDWICK, Appellee.

Jack D. SEDWICK, Appellant,

v.

Mary E. PATRICK, Appellee.

Nos. 587, 602.

Supreme Court of Alaska.

April 21, 1966.

Robert A. Parrish, Fairbanks, for Mary E. Patrick.

Arthur D. Talbot, Anchorage, for Dr. Jack D. Sedwick.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

These consolidated appeals are taken from a $45,000.00 judgment entered by the trial court on January 12, 1965, in favor of Mary Patrick against Dr. Jack Sedwick.

This is the third occasion that this cause has been before this court. A brief recapitulation of the history of this litigation is necessary.

On July 10, 1957, Dr. Sedwick (hereinafter referred to as appellee) performed a subtotal thyroidectomy operation upon Mary Patrick (hereinafter referred to as appellant). Thereafter, on July 3, 1959, appellant filed a personal injury action against appellee. During the first week in October 1961, a five day nonjury trial was held. On February 1, 1962, the trial court filed a memorandum decision in which it found appellee negligent in regard to his postoperative treatment of appellant. At the time the lower court rendered this decision, it also ordered counsel to file briefs on the question of damages.[1]

The trial court's memorandum decision and order of February 1, 1962, resulted in motions by both parties to amend the court's findings as to liability and by appellant for a new trial. Thereafter, on October 11, 1962, the trial court entered an order which denied the parties' respective motions for a new trial "on all issues of liability" but granted a new trial on the issue of damages.[2] Apparently the trial court was of the opinion that the damage issues were not adequately presented due to the various theories of liability upon which the case was tried and also because of the trial court's conclusion that appellee was only postoperatively negligent.

Appellant then appealed to this court from the trial court's order of October 11, 1962. In regard to this initial appeal, it

---

1. Note: The trial court's memorandum decision of February 1, 1962, contained no findings or determination as to the issue of damages. Concurrently with the filing of its memorandum decision of February 1, 1962, the trial court entered an order which read in part:

It is, therefore, ordered, that counsel for the plaintiff shall prepare and file a brief on the question of damages * * *. Counsel in their briefs are invited to comment upon the evidence received in addition to submitting authorities and argument.

2. The trial court's order of October 11, 1962, in its pertinent portions reads:

I am convinced that the issues on damages were not adequately presented. This may be so because of the difficult questions of liability which were raised and because of the course of my decision. Therefore, I have decided to separate the issues on damages from the questions of liability.

IT IS ORDERED that the motions for a new trial are denied on all issues of liability, but a new trial on the issues of damages is appropriate. Therefore, this matter shall be set down for further hearing on the damage issues only.

was held that neither the memorandum decision of February 1, 1962, nor the subsequent order of October 11, 1962, constituted "a final judgment from which an appeal may be taken under our rules."[3] The appeal was dismissed due to its prematurity and the case was remanded to the trial court for further proceedings.[4]

After this court's mandate had been filed in the superior court, the parties stipulated to the entry of a judgment in appellee's favor, nunc pro tunc as of February 1, 1962. The trial court then entered judgment for appellee pursuant to this stipulation.[5]

Appellant then again appealed to this court. In this second appeal, this court held that appellant had established a prima facie case of negligence as to the manner in which appellee had performed the subtotal thyroidectomy surgery.[6] The trial court's findings and judgment in favor of appellee on the issue of liability were set aside, and the case was remanded

> *with directions to enter findings for the plaintiff on the issue of liability and then to proceed to determine the damage issue.*[7] (Emphasis furnished.)

Subsequent to this court's remand,[8] counsel for appellee, on November 20, 1964, moved the superior court for an order permitting further discovery.[9] In this motion appellee sought to have appellant examined by three physicians and allowance of such further depositions as might be indicated by the results of the requested medical examinations of appellant. Appellee grounded his motion on the fact that over three years had elapsed since the matter was tried to the court and that "justice" would require that he "be allowed to discover and show how plaintiff has fared since her case was originally tried." Appellee also based his motion for additional discovery on the fact that Dr. Robert B. Lewy of Chicago, in May of 1963, had perfected a

> quick and painless technique for restoring acceptable voice and breathing to many patients who have suffered the paralysis of one vocal cord following the loss of a recurrent laryngeal nerve.

Appellee also contended that if appellant's paralyzed vocal cord is treatable by the Lewy technique, this fact would constitute newly discovered evidence of the utmost importance in assessing plaintiff's damages.

During oral argument on appellee's motion for further discovery, the trial court had occasion to allude to its October 11,

---

3. Patrick v. Sedwick, 387 P.2d 294, 296–297 (Alaska 1963).

4. Patrick v. Sedwick, id. at 299. Note at 297, Justice Arend, writing for the court, stated:
 Since the damages issue has not been adjudicated, neither the memorandum opinion nor the order of October 11, 1962, constituted a final judgment or order and, therefore, the appeal was premature.

5. The judgment which was entered on September 25, 1963, pursuant to the stipulation of the parties provided:
 [T]he plaintiff recover nothing from the defendant and that the plaintiff's complaint be and the same is hereby dismissed, with prejudice, and without costs to either party; and it is further
 ORDERED that, for the purpose stated in the foregoing motion of the parties, this judgment may be deemed entered, nunc pro tunc, as of February 1, 1962.

6. Patrick v. Sedwick, 391 P.2d 453, 456 (Alaska 1964). Specifically, this court held that the appellant's evidence established a prima facie case that appellee negligently severed or otherwise damaged appellant's recurrent laryngeal nerve.

7. Patrick v. Sedwick, id. at 460.

8. This court's mandate in regard to Patrick v. Sedwick, supra note 6, was spread in the superior court on July 2, 1964.

9. Appellee in his "Motion For Order Allowing Discovery" sought an order which would have permitted him to have appellant
 1. * * * [E]xamined by Doctors Milo H. Fritz, Francis J. Phillips, and Robert B. Lewy;
 2. Allowing both parties the privilege of taking such depositions as may be indicated by the results of the foregoing medical examinations.

1962, order in which a new trial on the issues of damages had been granted. In explaining the basis of his grant of a new trial as to damage issues, the trial judge stated:

I had rejected the grounds of liability on the basis that the doctor was negligent in the course of his operation * * * but I had found liability on the grounds that the doctor in his postoperative treatment had abandoned the patient. I had felt that the damages which might flow from * * * his obligation in this connection, might not have been anticipated by attorneys representing the parties here, and I was unsure as to what the major damages ought to be in this connection; so I had, for that reason decided to at least investigate to determine what damages should be * * *. I have in mind now to defer any action on this motion until I review the transcript to find out and inquired into it; and at least refreshed my recollection, as to what the testimony is that may bear on damages. I suppose that if I found it were necessary or desirable to investigate the possibilities of treatment, I might grant your motion. *If, on the other hand, I find that on the basis of the present record that I can adequately impose—or reach—find sufficient evidence to render any judgment on damages, and that the uncertainties in the procedure suggested by you, outweigh any benefits far beyond reasonable mitigation, then I would deny your application and enter a judgment.* (Emphasis furnished.)

After oral argument the trial court took appellee's discovery motion under advisement and then on January 12, 1965, filed "Findings of Fact,"[10] "Memorandum on Damage Issues," and a "Judgment" in the amount of $42,500.00, plus $2,500.00 in attorney's fees.

10. The "Findings of Fact" in regard to liability were entered pursuant to this

In his conclusions of law, the trial judge stated in part:

As a result of the defendant's negligence, plaintiff suffered physical impairment, loss of earning capacity, and mental suffering.

Plaintiff is entitled to recover damages from the defendant for (a) physical impairment; (b) loss of earning capacity; (c) mental suffering including anguish, embarrassment, humiliation, fear and the like.

In his "Memorandum on Damage Issues," the trial judge concluded that the evidence adduced at the trial in October 1961, was "sufficient to arrive at a determination on damage issues." The trial judge in this same memorandum also held that appellee's motion for further discovery should be denied. In reaching this conclusion, the trial judge stated in part:

So far as I can ascertain the injection of Tantalum glycerine or Teflon-glycerine (the substances recommended) into the lateral portion of a vocal cord is a practical and safe procedure. Its use is indicated to increase the substance of a paralyzed, lateral lying, vocal cord toward the midline, to cooperate tonally and vocally with its active fellow. *There is no assurance, however, that any improvement is permanent.*

*Under the circumstances, defendant's application for additional discovery is denied. The only certain result would be an additional delay. Even if improvement might be noted, there is no assurance that it would be permanent.* (Emphasis furnished.)

As to the damages to which appellant was entitled, the trial court, in its Memorandum on Damage Issues, found appellant should recover:

(1) $6,000 for physical impairment of the plaintiff from the time of the operation, July 10, 1957, up until the time

court's opinion and mandate in the second appeal.

of the trial, October 2, 1961, and an additional $15,000 for future physical impairment.

(2) $3,000 for loss of time arising out of plaintiff's inability to perform her ordinary pursuits, such as housework and the like, and an additional $10,000 for future loss of earning capacity reduced 20% to $8,000 estimated present cash value.

(3) $3,000 for mental suffering including embarrassment, anguish, humiliation, fear and the like, and $7,500 for future mental suffering.

Costs shall be assessed by the Clerk and an attorney's fee in the amount of $2,500 is allowed.

Judgment was entered on January 12, 1965, and on January 22, 1965, appellee moved for a new trial on the grounds of newly discovered evidence.[11] Thereafter, the trial court denied appellee's motion for a new trial and appellant and appellee (cross-appellant) both appealed from the trial court's entry of judgment of January 12, 1965.

Before considering the issues relating to damages in these consolidated appeals, we think it appropriate to discuss appellee's contention that "the decision of this court on plaintiff's second appeal, holding the defendant liable, is clearly erroneous and should be reconsidered." Appellee concedes that "an appellate court ordinarily will not reconsider questions which have been definitely determined on a former appeal."[12] Appellee further contends that in "exceptional circumstances and when cogent reasons therefor exist" questions decided on a former appeal may be reconsidered and reversed.[13]

█ It is a well settled rule of law that whatever issues have been decided on a first appeal will not be re-examined on a second appeal in the same case. Downie v. Pritchard, 309 F.2d 634, 636 (8th Cir. 1962); Pyramid Life Ins. Co. v. Curry, 291 F.2d 411, 414 (8th Cir. 1961); Midland Valley R. R. v. Jones, 115 F.2d 508, 509 (10th Cir. 1940); Vangel v. Vangel, 51 Cal.2d 510, 334 P.2d 863, 870 (1959); Davis v. Payne & Day, Inc., 12 Utah 2d 107, 363 P.2d 498, 499 (1961). In Woodworkers Tool Works v. Byrne, 202 F.2d 530, 531 (9th Cir. 1953), the policy considerations underlying the doctrine of the law of the case were said to express

the general practice of the courts to decline to reopen what they have already in effect decided. Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152. * * * The rule is grounded in large part on the policy of ending litigation, * * *[14]

█ We are of the opinion that appellee has not demonstrated any "exceptional cir-

11. Appellee's purported newly discovered evidence pertained to
 discovery and perfection by Dr. Robert B. Lewy, of Chicago, subsequent to the trial of this action (which took place October 1961) of a new and modern method for rehabilitating the voice and breathing of persons adversely affected (as is the plaintiff in this action) by unilateral vocal chord paralysis; that persons cured by the Lewy technique of Teflon injection may expect permanent benefit from this treatment; and that the risk of treatment by the Lewy technique is negligible.

12. Appellee cites 5B C.J.S. Appeal and Error § 1821 (1958), in support of this concession.

13. In support of this assertion appellee cites 5B C.J.S. Appeal and Error § 1824 (1958).

14. See also Thornton v. Carter, 109 F. 2d 316, 320 (8th Cir. 1940), where the court stated:
 After a case has been brought to this court and decided and a mandate has been issued to the court below, a second appeal brings up nothing for revision but the proceedings subsequent to the mandate; and 'there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members.' United States v. Camou, 184 U.S. 572, 574, 22 S.Ct. 505, 506, 46 L.Ed. 694. * * *

cumstances" which would warrant a departure from the law of the case doctrine and reconsideration of the liability issue.[15] We hold that the law of the case doctrine is applicable here and decline to re-examine the issue of appellee's liability.[16]

■ Both parties to this appeal attack the trial court's award of damages. Appellant argues that the award of $42,500.00 damages is inadequate. Appellee contends that the damages awarded are excessive. In regard to the damage issue, appellant urges this court, under Supreme Ct. R. 51(b),[17] to review the damage aspect of this case "de novo and to enter corrective findings determining an adequate award." It is not the function of this court to make new independent findings upon evidence which we did not hear. Our province on review is to determine alleged "errors of law committed by the trial court in reaching its decision, and not to try the issues de novo." Star Bedding Co. v. Englander Co., 239 F.2d 537, 541 (8th Cir. 1957); accord, A. F. Pylant, Inc. v. Republic Creosoting Co., 285 F.2d 840, 842–843 (5th Cir. 1961); Buena Vista Homes, Inc. v. United States, 281 F.2d 476, 480 (10th Cir. 1960); Panaview Door & Window Co. v. Reynolds Metals Co., 255 F.2d 920, 926 (9th Cir. 1958).

As indicated at the outset of this opinion, the case at bar was tried to the superior court without a jury. In regard to the extent of the trial court's duty to make findings under Civ.R. 52(a) in a nonjury case, this court stated in Merrill v. Merrill[18] that

> under Rule 52(a), it is the duty of the trial court by sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'

Accord, Hamilton v. Lotto, 391 P.2d 948, 949 (Alaska 1964); Spenard Plumbing & Heating Co. v. Wright, 370 P.2d 519, 525–526 (Alaska 1962); Dickerson v. Geiermann, 368 P.2d 217, 219 (Alaska 1962).

This appeal raises the question of just how complete a trial judge's findings as to damages must be in order to comply with Civ.R. 52(a). In Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065, 1074 (1956), Mr. Justice Clark wrote:

> But it is necessary in any case that the findings of damages be made with sufficient particularity so that they may be reviewed.[19]

As to the requisite degree of particularity of findings in regard to damages, the court, in Alexander v. Nash-Kelvinator

---

15. Appellee contends that in Patrick v. Sedwick, 391 P.2d 453 (Alaska 1964), this court erroneously concluded appellee was negligent. Appellee contends that this court mistakenly assumed that a subtotal thyroidectomy of a Hashimoto's goiter presented operating difficulties which a careful surgeon would describe in his operative report; that this court mistakenly assumed that when a recurrent laryngeal nerve is injured in the thyroid surgery, the surgeon is aware of such an occurrence; and that this court erred in holding that the mere severing of the recurrent laryngeal nerve constituted a prima facie case of negligence against the surgeon.

16. This issue was previously determined in 391 P.2d 453.

17. Supreme Ct.R. 51(b) provides:
 The supreme court may affirm, modify, vacate, set aside or reverse any judgment, decree, decision or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings to be had as may be just under the circumstances.

18. 368 P.2d 546, 548 (Alaska 1962).

19. The Hatahley case was an appeal in a Federal Tort Claims case which involved damages for confiscation and destruction of horses of Navajo Indians by federal agents.

Corp., 261 F.2d 187, 190–191 (2d Cir. 1958), modified, 271 F.2d 524 (1959), stated:

> The findings required under Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A., including those made as to damages, must 'be made with sufficient particularity so that they may be reviewed'. \* \* \*

This court is mindful of the principle so frequently reiterated that the question of the excessiveness of a jury verdict is to be determined by the trial court on a motion for a new trial. In such cases the trial court, in effect, occupies the position of a reviewing judge. He has the power to pass upon, set aside or even reduce by remittitur excessive awards. Where a case is tried by a judge without a jury the defendant is deprived of this right. The first opportunity which an aggrieved defendant has in this respect in a non-jury trial is upon appeal. For these reasons it becomes most important that the trial court comply meticulously with the requirements of Rule 52(a) with respect to findings so that the appellate court can properly appraise the elements which entered into the award. Just as the trial judge passes upon possible passion or prejudice and all the other legal grounds for attacking excessive damages on the post-trial motion to set aside a jury verdict so on the appeal the appellate court should have some knowledge of the basis or theory upon which the trial judge acted. Without this information the defendant is unable properly to exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review.

■ Accord, Daido Line v. Thomas P. Gonzalez Corp., 299 F.2d 669, 676–677 (9th Cir. 1962); Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 590, 96 A.L.R.2d 1085 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); United States v. Horsfall, 270 F.2d 107, 109 (10th Cir. 1959); O'Connor v. United States, 251 F.2d 939, 942–943 (2d Cir. 1958); United States for Use and Benefit of Burton Mill and Cabinet Works v. A. J. Rife Constr. Co., 233 F.2d 789, 790 (5th Cir. 1956).[20] The rationale of the *Alexander* case is equally applicable in the instance where either the jury's verdict, or the court's judgment in a nonjury case, is claimed to be inadequate. We are persuaded that the position of the *Alexander* case and the other authorities referred to is correct as to the degree of particularity required in findings as to damages under Civ.R. 52.

In view of the purpose of findings of fact under Civ.R. 52 and the degree of particularity required of findings as to damages, we are of the opinion that the matter must, unfortunately, be again remanded to the superior court.

■ Our review of the record leaves us with the conclusion that the trial court's findings in regard to damages for past and future physical impairment, as well as its findings as to damages for loss of time and future impairment of earning capacity are not sufficiently detailed to afford us a clear understanding of the basis of the court's award.

At oral argument before this court counsel for both parties conceded that the trial court's findings in regard to past and future physical impairment, and as to loss of time and future impairment of earning capacity were inconsistent. The evidence established that at the time of trial appellant was 40 years old, had a life expectancy of 28 years, and that appellant's loss of voice and difficulties in breathing were permanent conditions. In his findings, the trial

20. Compare Henderson v. United States, 328 F.2d 502, 505 (5th Cir. 1964); United States v. Jacobs, 308 F.2d 906, 907 (5th Cir. 1962); O'Toole v. United States, 242 F.2d 308, 310–311 (3d Cir. 1957); United States v. Grigalauskas, 195 F.2d 494, 498 (1st Cir. 1952). (Note in Grigalauskas, the court stated "It was not necessary \* \* \* for the court to reveal the method in assessing unliquidated damages.")

judge awarded $6,000.00 for physical impairment for the four year period between the date of the operation and the time of the trial (July 10, 1957 to October 2, 1961) and $15,000.00 damages for future physical impairment. The trial court also awarded $3,000.00 in loss of time for the four year period and "an additional $10,000 for future loss of earning capacity reduced 20% to $8,000 estimated present cash value."

Neither review of the record nor review of the trial court's findings afford a clear understanding of the significant discrepancies between the award of $6,000.00 for physical impairment for a four year period and only $15,000.00 for future physical impairment of appellant or between the $3,-000.00 awarded for loss of time for the four year period and the $8,000.00 awarded for loss of future earning capacity.

 In light of the record and the findings, we hold that the case should be remanded to the trial court for the purpose of making more specific and detailed findings in regard to past and future damages for physical impairment and past and future damages pertaining to loss of time and impairment of earning capacity.[21] In this regard we are of the opinion that it will be of considerable assistance if the trial court, upon remand, were to make findings as to appellant's earning capacity and degree of her impairment in regard thereto.[22]

In view of our conclusion to remand this matter for further findings as to these elements of damages, we consider it unnecessary to rule upon appellant's contention that the $42,500.00 award is inadequate or upon appellee's assertion that the $42,500.00 award is excessive, and we express no opinion on those opposing contentions at this time.

Two other issues in these appeals require our disposition. The first of these issues are appellee's contentions that the trial court committed reversible error in denying his November 20, 1964, motion for further discovery and in denying his January 22, 1965, motion for a new trial on the grounds of newly discovered evidence. Since both of these motions were grounded on the discovery by Dr. Robert B. Lewy of the technique of Teflon injections in the treatment of paralyzed vocal cords, the motions will be treated together.

In Ahlstrom v. Cummings,[23] the court held that:

The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.

In Montgomery Ward v. Thomas,[24] the *Ahlstrom* standard of review of motions for new trial was made applicable to motions based on the grounds of newly dis-

---

21. We reject appellant's assertion that the trial court erred in awarding $3,000.00 for pain and suffering for the four year period between the operation and the trial and only $7,500.00 for future pain and suffering. Our review of the evidence has not convinced us that these sums are so inadequate as to constitute clear error. There is no fixed measure of compensation in awarding damages for pain and suffering. An award for pain and suffering "necessarily rests in the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation." Imperial Oil, Ltd. v. Drlik, 234 F.2d 4, 10 (6th Cir.),

cert. denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236 (1956); Waterman S. S. Corp. v. Rodriguez, 290 F.2d 175, 180–181 (1st Cir. 1961).

22. Compare Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918, 921 (2d Cir. 1961); Waterman S. S. Corp. v. Rodriguez, supra note 21, 290 F.2d at 180. See 5 Moore, Federal Practice § 52.06[2], at 2662 (1964).

23. 388 P.2d 261, 262 (Alaska 1964).

24. 394 P.2d 774, 775 (Alaska 1964). See also Edgar v. Finley, 312 F.2d 533, 536–537 (8th Cir. 1963).

covered evidence. In so holding, this court stated:

> The same general rule is applicable though the motion for new trial is based on newly discovered evidence, as the trial judge is in a better position to determine the possible effect and merit of the newly discovered evidence since he presided over the original trial and was familiar with all of the evidence presented.

In *Montgomery Ward*,[25] it was also held that a motion for new trial on the grounds of newly discovered evidence must meet the following requirements before it could be granted:

> (1) must be such as would probably change the result on a new trial; (2) must have been discovered since the trial; (3) must be of such a nature that it could not have been discovered before trial by due diligence; (4) must be material; (5) must not be merely cumulative or impeaching.[26]

In addition to the foregoing requirements, it is established that for any evidence to come within the category of "newly discovered" such evidence must relate to facts which were in existence at the time of the trial. Ryan v. United States Lines Co., 303 F.2d 430, 434 (2d Cir. 1962); Brown v. Pennsylvania R. R., 282 F.2d 522, 526–527 (3d Cir. 1960), cert. denied, 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961); Campbell v. American Foreign S. S. Corp.,[27] 116 F.2d 926, 928 (2d Cir. 1941); Petition of Boeing Airplane Co., 23 F.R.D. 264, 265 (D.C. D.C.1959), modified, Boeing Airplane Co. v. Cogeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960); 3 Barron & Holtzoff, Federal Practice and Procedure § 1305, at 371 (rules ed. Wright rev. 1958); 6 Moore, Federal Practice § 59.08[3], at 3785 (1965).

We hold, under the authorities referred to, that the trial court did not abuse its discretion in denying appellee's motion for a new trial on the grounds of newly discovered evidence. It is clear from the record that Dr. Lewy's discovery of the Teflon technique did not occur until a considerable period of time had elapsed after the case was tried in October 1961. Thus, the Lewy technique was not in existence at the time the trial took place and under the above authorities would not qualify as newly discovered evidence.

In addition to the foregoing, the record discloses other bases for affirmance of the trial court's denial of these motions. As we indicated earlier in this opinion at the time this court reversed this cause on the issue of liability, the matter was remanded to the trial court with directions to "proceed to determine the damage issue." Under the terms of this court's remand the trial court was vested with wide discretion as to the precise manner in which the damage issues were to be determined. And as pointed out

---

25. Id. at 776.

26. See also McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 410 (10th Cir. 1965), cert. denied, 86 S.Ct. 1061 (1966); Cannon v. Travelers Indem. Co., 314 F.2d 657 (8th Cir. 1963); Moylan v. Siciliano, 292 F.2d 704, 705 (9th Cir. 1961); Davis v. Yellow Cab Co., 220 F.2d 790, 791 (5th Cir. 1955); Tracy v. Terminal R. Ass'n, 170 F.2d 635, 640–641 (8th Cir. 1948); State v. Salinas, 362 P.2d 298, 301 (Alaska 1961); 6 Moore, Federal Practice § 59.08[3], at 3788–89 (2d ed. 1965).

27. In Campbell v. American Foreign S. S. Corp., supra, Judge Swan wrote: * * * 'newly discovered evidence' within the rule. That phrase refers to evidence of facts in existence at the time of the trial, of which the aggrieved party was excusably ignorant. If it were ground for a new trial that facts occurring subsequent to the trial have shown that the expert witnesses made an inaccurate prophecy of the prospective disability of the plaintiff, the litigation would never come to an end. The weight of authority is against the granting of a new trial on the ground of unexpected improvement in the plaintiff's condition, unless the evidence is sufficient to show fraud. See also Rogers v. Goforth, 121 W.Va. 239, 2 S.E.2d 903, 906 (1939).

earlier, the trial judge concluded upon remand that he could determine the damage issues upon the record of the evidence adduced at the October 1961 trial.[28]

In light of all the circumstances appearing in the record, we cannot find that the trial court abused its discretion in either denying appellee's motion for further discovery or motion for new trial on the grounds of newly discovered evidence. Whether appellee's motions are viewed as Civ.R. 59 and Civ.R. 60(b) (2) motions for new trial on the grounds of newly discovered evidence or a Civ.R. 60(b) (6) [29] motions, we hold that there was no abuse of discretion. The record reflects that the trial court carefully considered the evidence adduced in regard to Dr. Lewy's Teflon technique. We cannot find that his reasons for denying these motions clearly indicate an abuse of discretion on the part of the trial court.

Although the last remaining issue is affected by our conclusion to vacate the judgment and to remand this cause for additional findings on damages, we consider it appropriate to discuss appellant's contentions in regard to the trial court's award of $2,500.00 in attorney's fees to appellant. If the fee schedule set forth in Civ.R. 82(a) had been adhered to by the trial court, appellant would have been entitled to an award of attorney's fees in the amount of $5,100.00. Appellant argues that the trial court erred in not fixing attorney's fees in accordance with Civ.R. 82(a)'s schedule. In Preferred Gen. Agency of Alaska, Inc. v. Raffetto,[30] this court said:

We limit our review in matters of this kind to the question of whether the court exceeded the bounds of the broad discretion vested in it. The purpose of Civil Rule 82 in providing for the allowance of attorney's fees is to partially compensate a prevailing party for the costs to which he has been put in the litigation in which he was involved. The rule was not designed to be used capriciously or arbi-

---

28. Set forth earlier in this opinion are the trial judge's reasons for concluding upon remand that the evidence adduced in October 1961 was sufficient for determination of the damage issues.

29. Civ.R. 59 provides in part:
(a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
\* \* \*
(d) *Contents of Affidavit.* If a ground of the motion is newly discovered evidence, the motion shall be supported by the affidavit of the party, or of his agent or an officer within whose charge or knowledge the facts are, and also by the affidavit of his attorney, showing that the evidence was in fact newly discovered and why it could not with reasonable diligence have been produced at the trial. If the newly discovered evidence consists of oral testimony, the motion shall be supported by the affidavit of the witness or witnesses to the effect that he or they would give the testimony proposed. If the newly discovered evidence is documentary, the motion shall be supported by the documents themselves or by duly authenticated copies thereof, or if that is impracticable, by satisfactory evidence of their contents.
Civ.R. 60(b) provides:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
\* \* \*
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
\* \* \*
(6) any other reason justifying relief from the operation of the judgment.

30. 391 P.2d 951, 954 (Alaska 1964).

trarily, or as a vehicle for accomplishing any purpose other than providing compensation where it is justified.[31]

 Taking into consideration the amount of appellant's recovery and the complexity of the legal principles involved in the trial, we cannot discern, from a reading of the record, the basis for the trial court's departure from Civ.R. 82(a)'s schedule of fees. We hold that when a party recovers a money judgment in contested litigation the trial judge should indicate on the record his reasons for nonadherence to the fee schedule set forth in Civ.R. 82(a) in determining his award of attorney's fees.

Since we have concluded to vacate the judgment entered below, on remand the superior court is directed to recompute the amount of attorney's fees to be awarded appellant. In the event the superior court again concludes not to adhere to Civ.R. 82(a)'s fee schedule, the reasons for such nonadherence should be indicated on the record.

The judgment entered below is vacated and the cause remanded to the superior court for the purpose of making appropriate findings as to the damage issues alluded to in this opinion and for the further purpose of entering an appropriate judgment thereon.

31. Other decisions of this court relating to aspects of Civ.R. 82 are M-B Contracting Co. v. Davis, 399 P.2d 433, 437 (Alaska 1965) ; Davidsen v. Kirkland, 362 P.2d 1068, 1070 (Alaska 1961).